UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 OCT 27 P 12: 51

| | |
|---|---|
| ROBERT MURPHY ET AL )<br>)<br>PLAINTIFFS )<br>)<br>VS. )<br>)<br>ZONING COMMISSION OF THE )<br>TOWN OF NEW MILFORD ET AL )<br>)<br>DEFENDANTS )<br>)<br>) | CIVIL ACTION NO.<br><br>300CV2297HBF<br><br><br>OCTOBER 24, 2003 |

### DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION
### FOR ATTORNEY'S FEES, COSTS AND EXPENSES

The Defendants, Zoning Commission of the Town of New Milford et al., (hereinafter the "Commission" or the Defendants) pursuant to Federal Rule of Civil Procedure 54(d)(2) respectfully object to the Plaintiffs' motion for attorney's fees, costs and expenses. The plaintiffs request for $136,169.16 is excessive in that some of the hours claimed can not be justified, the hourly rate for at least one of the attorneys is above market rate and the billing record is vague. In addition, out of 13 claims in their complaint, the plaintiffs were only successful on 4. Therefore, in order to arrive at a reasonable amount, a significant reduction in the amount claimed for attorney's fees, expenses and costs is needed.

1

FACTS AND PROCEDURAL HISTORY

On or about December 1, 2001, the Plaintiffs filed their complaint in this matter alleging certain violations of their First Amendment Rights as guaranteed by the U.S. Constitution as well as an infringement on certain protections afforded by the Religious Land Use and Institutionalized Person's Act, 42 U.S.C. 2000cc, et. seq. ("RLUIPA"). These alleged violations involved an attempt by the Defendants to place a reasonable limit on the number of persons attending weekly meetings at the Plaintiffs' home.

During the months of November and December of 2002, all parties to this matter filed motions for summary judgment as to all counts of the plaintiffs' complaint and all special defenses of the Defendants' answer. Objections and replies thereto were subsequently filed with the court. In addition, the United States filed an objection as an intervener while the Becket Fund filed an amicus brief.

The court issued a ruling on these motions on September 30, 2003. In this ruling, the court found that the actions of the Defendants had violated the protections afforded to the plaintiffs by the federal constitution to peaceably assemble and freely exercise their religion. In

addition, a violation of RLUIPA was found. Pursuant to the terms of RLUIPA as well as The Civil Rights Act, 42 U.S.C. 1983, success on these claims would entitle the plaintiffs to file a request for attorney's fees, costs and expenses under the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. 1988. This the plaintiffs did on October 9, 2003.

## ISSUE

Are the plaintiffs entitled to an award for attorney's fees, costs and expenses in the amount requested.

## LAW AND ARGUMENT

### I. Standard of Review

In its motion for attorney's fees, costs and expenses, the plaintiffs relie on 42 U.S.C. 1988 as a basis for their request. "Although under the 'American Rule' each party in a lawsuit bears the burden of paying its own attorney's fees, certain statutes provide that a successful party may recover such fees from the adversary." Nu-Life Construction v. Board of Education of City of New York, 795 F. Supp. 602, 604, (E.D.N.Y. 1992) aff. 28 F.3d 1335 (2nd 1994).

42 U.S.C. 1988 provides in part that "the court, in its discretion, may allow the prevailing party, other than

the United States, a reasonable attorneys' fee as part of the costs". The plaintiffs have sought this judicial award by means of its motion in order to secure a monetary award based on its claims under 42 U.S.C. 1983 and RLUIPA.

When reviewing a motion under 42 U.S.C. 1988, a court must determine what constitutes a reasonable attorneys' fee. This is done by computing a lodestar figure which is arrived at by "multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved." U.S. Football League v. National Football League, 887 F.2d 408, 413 (2nd Cir. 1989) citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 563, 106 S.CT. 3088 (1986). This lodestar figure can be adjusted upward or downward by the court. A party seeking to reduce the lodestar amount bears the burden of proof of showing that a reduction is justified. U.S. Football, at 413.

"In this circuit, in order for a party to recover attorney's fees, such time records must be made contemporaneously with the associated work. Furthermore, these records should specify, for each attorney, the date, hours expended, and the nature of the work done. As a general rule, only the time expended on the plaintiff's

4

successful claims is to be considered in arriving at a fee award." Nu-Life at 605. *(internal citations omitted)*.

"Where a plaintiff has achieved only partial or limited success, full compensation for attorney's fees would not be reasonable. The district court may either attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." U.S. Football at 413. *(internal citations omitted)*.

II. Plaintiff Not Entitled to Award Requested

A. Amount of Billable Hours Claimed is Excessive

Two documents which were downloaded from the American Center for Law and Justice's web site (www.aclj.org) are included as attachments to this brief. The reason for their inclusion is to provide evidence that at least some, if not all, of the documents filed by the plaintiffs in this matter were based mostly, if not entirely, on preexisting documents. These attachments are from a case entitled Reiter v. City & County of Denver that involved a land use regulation which prohibited prayer meetings in residential homes. The ACLJ represented a local homeowner who was affected by the regulation. Attachment A is a letter dated March 4, 1999 from the ACLJ to the local

zoning board.  Attachment B is the complaint filed in the case.

A comparison of attachment A with the letter submitted by the plaintiffs' ACLJ counsel, Attorney McCarthy, on November 6, 2000 (Pl. Motion Fees ex. C) reveal not just a similarity between the two documents but a mirror image. The only difference involves a substitution of a few facts and names.  The letter's format, legal arguments and conclusions are identical to that of attachment A.  Since attachment A predates the plaintiffs' letter and since Attorney McCarthy is senior regional counsel for the ACLJ, a strong presumption exists that attachment A served as the source for plaintiffs' November 6, 2000 letter.

A comparison of the Plaintiffs' many complaints in this matter to exhibit B show a similar pattern.  Except for the facts, the complaint copies the format, legal arguments and wording of attachment B.  Again, since attachment B predates this matter and was prepared by the ACLJ and available on its web site, a strong presumption arises that attachment B served as the source for plaintiffs' complaints in this matter.

Exhibit D of the plaintiffs' motion for attorney's fees and costs purports to set forth a record of time spent

6

by plaintiffs' legal counsel on this matter. The first line item claims that 8 hrs were spent on 11/8/00 preparing a letter to the zoning board. Despite the error in the date (the letter is dated 11/6/00), this statement of time spent should be viewed by this court with skepticism as a download of attachment A along with a minimal amount of time spent to change the names of the parties and a few other facts does not justify a claim for 8 hours of attorney fees.

Similarly, a claim for 5 hours of legal fees to prepare a complaint which was already in existence, as attachment B shows, also should be viewed with skepticism.

These examples show a clear pattern of using ACLJ prepared legal documents as the form and substance of their legal documents submitted in this case. A review of all the legal briefs submitted, except possibly the plaintiffs' objection to Defendants' motion for summary judgment, show a pattern of claims made and legal arguments presented that have no basis in the facts of this case. This court recognized this in its decision on the parties' motions for summary judgment.

For example, this court stated at page 25 of its decision regarding the plaintiffs' claim regarding free

speech that "In making these sweeping allegations, plaintiffs never quote the Cease and Desist Order or the NMZC's Opinion. Indeed they could not, for the Cease and Desist Order prohibits only the use of plaintiffs' home as a meeting place by a diverse group of people who are not family members … It does not limit the use by the type or purpose of the meetings." In addressing the plaintiffs claim regarding due process at page 44 of its decision, this court stated "Although plaintiffs repeatedly refer to the Cease and Desist Order's prohibition on prayer meetings, and hypothecate as to which type of meetings would fall under that heading, plaintiffs never produced any evidence of governmental regulation concerning prohibition of prayer meetings." Compare this to the section headings in the plaintiffs' memorandum in support of its motion for a preliminary injunction. For example at page 7 they claim "Defendants' *prohibition of private religious gatherings…*" (emphasis added) and at page 13 a claim is made that "Defendants' actions are predicated on the *content of the speech* engaged in at the Murphy Home". (emphasis added again).

This pattern of including facts from another case (perhaps the Riter case where prayer meetings faced a

8

prohibition regulation) is consistent throughout all of the plaintiffs' documents submitted in this case. From one of its first documents, a memorandum filed in support of its motion for a preliminary injunction dated March 13, 2001, to its motion for summary judgment, the plaintiffs consistently mischaracterize the facts of this case and cite boilerplate cases to support their position, thus raising a presumption that these documents were entirely based on legal memorandum prepared for another case and then recycled for this matter. While the Defendants commend the plaintiffs and the ACLJ of assembling a body of legal arguments which can then be used repeatedly as they represent various persons around the nation (any good law firm would do the same), Defendants do not feel it is proper that a legal fee be requested in this matter which does not fairly represent the actual effort and time spent by plaintiffs' legal counsel in the preparation of the documents filed.

Both the attachments to this brief and the body of plaintiffs' work submitted to this court illustrate a pattern by plaintiff of relying heavily on work done previously for other cases. Defendants respectfully request that for this reason, the plaintiffs' motion for

9

fees and costs be denied until a more complete showing of evidence is made demonstrating the actual time spent prosecuting this action by the plaintiffs' legal counsels with a particular emphasis on the time spent on document preparation. Short of this type of review, the court would be within its lawful discretion to instead significantly reduce the fee and cost award in recognition of the issues and facts raised by the Commission. *See argument below as well as* See <u>U.S. Football</u>, *887 F.2d 408, and* <u>New York State Ass'n for Retarded Children Inc. v. Carey</u>, *711 F.2d 1136, and* <u>Nu-Life</u>.

    B.   <u>Submitted Time Sheets are Vague</u>

"Central to an application for attorney's fees is the submission of time records reflecting the hours expended by the attorney in *pursuing the successful claims* of his client. <u>Nu-Life</u> at 605 (emphasis added) "Where a plaintiff has achieved only partial success, full compensation for attorney's fees would not be reasonable." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 436, 103 S.CT. 1933 (1983) In ruling on the parties' motions for summary judgment, the court ruled in favor of the plaintiffs on only 4 out of 13 claims. It could thus be said that the plaintiffs achieved only partial success.

10

The reason for this assessment of the plaintiffs' success is that it bears significantly on the issue of what would be a reasonable fee award in this matter. As the cases cited above indicate, only legal fees associated with successful claims should be awarded. Therefore, in order for a court to determine what a reasonable fee award should be, an accurate record of time spent by the legal counsel seeking the fee award is a necessity.

A review of plaintiffs' exhibit D show that this record is vague. In Nu-Life, 795 F.Supp. 602, the court reduced a legal fee and cost request by 30% because the time records submitted where vague. In that case, the time records in question included descriptions such as "Legal Research, Work on File, Telephone Call, and File Review". Id at 607. A comparison to exhibit D reveals the usage of these exact terms throughout the document. This usage of vague terms make it impossible for a court to determine just what a reasonable fee award should be.

"While vague descriptions such as these are not fatal to a fee application, courts in this circuit have reduced fee awards on the basis of unspecific time records" Id. At 607, (citations omitted) Two examples cited by the court in Nu-Life reduced legal fees and costs 30% due to the

11

vagueness of the documentation submitted to support the lodestar figure. See *U.S. Football*, 887 F.2d 408, 415 and *New York State Ass'n for Retarded Children Inc. v. Carey*, 711 F.2d 1136, 1146.

Not only does the vagueness of the plaintiffs' time records defeat any attempt to sort out what time was spent on each claim, it also frustrates any attempt to sort out the time spent on any given task. Frequently, each daily entry involves time spent on multiple tasks defying a task based analysis. This is critical, especially in regard to the Commissions' assertions regarding the charging of excessive fees in this matter.

For this reason also, the Defendants request that this court deny the plaintiffs' motion until more accurate records are submitted.

C.  Hourly Rate Excessive

Defendants would like to call into question the hourly rate charged by Attorney Kristina Wenberg. Her hourly fee of $200.00 per hour is excessive based on that fact that at the time she performed services on this matter, she had been practicing law for under 2 years (see resume, Pl. ex H). Plaintiffs themselves provide proof of this by

charging a similar rate for two of the other counsel who have much more experience.

Overall, the hourly rates stated by counsels for the plaintiffs appear to be too high for a small town market such as New Milford. As evidence of this, the Defendants submit a fee rate for committees in foreclosure sales for Hartford County. This fee is used by the courts because it is supposed to fairly represent the hourly rate for attorneys in Hartford County. Defendants ask that this cout apply the same $150.00 per hour rate to the plaintiffs' fee request so that a reasonable figure can be arrived at.

## CONCLUSION

When the Commission issued its opinion, followed by the issuance of a cease and desist order, it did so only after considering the issue of the plaintiffs' meetings at several public meetings over a four month period. While the plaintiffs' neighbors consistently attended the meetings to discuss this matter, the plaintiffs, nor their legal counsel, never made an appearance. Instead, a confrontational letter was received from plaintiffs' counsel that offered nothing in terms of resolving this matter, only that the Commission had no authority to act.

It was only after this four month period showed that there was an impasse in resolving this that any steps were taken. These steps were taken with the clear understanding that they were only a fist step; that an appeal to another local forum, the zoning board of appeals, would follow. Such an appeal to the zoning board would have stayed any further enforcement actions by the Defendants and provided a low cost, informal forum for all parties involved to discuss this matter. Instead, plaintiffs again chose a confrontational path, taking this matter directly to court as well as undertaking an aggressive public relations campaign to try this matter in the court of public opinion.

The Commission is composed of town citizens who serve without pay and who have no hidden agenda. Their goal is to enforce the zoning regulations is such a way that is fair to all residents of the Town of New Milford. The amount of the award requested by the Plaintiff is simply not justified by the law or the facts of this case.

In deciding whether a legal fee and cost award is justified; the Commission would ask that this court take into consideration its legal arguments as well as the history of this case. In doing so, the court will find that

the Defendants are correct in requesting that the plaintiffs' motion for legal fees and costs be denied.

RESPECTFULLY SUBMITTED BY
THE DEFENDANTS

BY _____
Steven E. Byrne
790 Farmington Ave. Bld.2
Farmington CT   06032
(860)677-7355
CT 10267

## CERTIFICATION

This is to certify that a copy of the above was mailed postage prepaid to the following counsel and pro se parties of record this 24th day of October, 2003.

Attorney Vincent McCarthy
8 South Main Street
P.O. Box 1629
New Milford CT   06776

Attorney Tamara Ulrich
U.S. Department of Justice
Civil Division, Federal Programs Branch
Room 7202
P.O. Box 883
Washington DC   20044

_____
Steven E. Byrne
Commissioner of Superior Court

15