IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

ROBERT MURPHY and MARY )
MURPHY, )
 )    CIV. NO. 3:00 CV 2297 (HBF)
    Plaintiffs, )
 )
    vs. )
 )
THE ZONING COMMISSION OF THE )
TOWN OF NEW MILFORD, ET AL., )
 )
    Defendants. )    October 30, 2003

PLAINTIFFS' REPLY TO DEFENDANTS' OBJECTION TO
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES

I.    INTRODUCTION

The Plaintiffs, Robert and Mary Murphy, submit this reply brief pursuant to Local Rule 7(d) and Federal Rule of Civil Procedure 6. On October 27, 2003, Plaintiffs received Defendants' Objection to Plaintiffs' Motion for Attorney's Fees, Costs and Expenses (hereinafter, "Def. Brief"). Defendants claim that Plaintiffs hours claimed are excessive and that the record submitted is vague. In addition, Defendants seek a reduction in Plaintiffs' award based on the number of actual successful claims. Plaintiffs attempted to thoroughly justify their request in their Motion, Memorandum and Exhibits, dated October 9, 2003, and continue to stand by the legitimacy of their request for attorney's fees pursuant to 42 U.S.C. § 1988. Plaintiffs, however, do concede a typographical error under Vincent P. McCarthy's documented time, dated November 8, 2000, as will be discussed in more detail below.

Plaintiffs' reply will attempt to highlight for the Court the inaccuracies and

misrepresentations of fact contained in Defendants' most recent filing, and also clarify the reasons why the hours billed were reasonable and necessary in this case.

## II.   REASONABLENESS OF FEES

### A.   The Measure of Success must Take into Account the "Interrelatedness" of the Plaintiffs' Claims

Plaintiffs are entitled to a reasonable fee award for all their claims in this case, despite the fact that their success rests on only some of their initial claims. Although Defendants assert that partial success necessarily means partial award, that is not the law in the Second Circuit in its entirety:

> A plaintiff who prevails on some but not all of his claims is not entitled to a fee award for unsuccessful claims that were based on *different facts* and different legal theories. However, a plaintiff's lack of success on some of his claims does not require the court to reduce the loadstar figure amount *where the successful and unsuccessful claims were interrelated and required essentially the same proof.*

*Tsombanidis v. City of West Haven, Connecticut*, 208 F. Supp. 2d 263, 271 (D. Conn. 2002) (citing *Murphy v. Lynn*, 118 F.3d 938, 951 (2d Cir. 1997), cert. denied, 522 U.S. 1115(1998); *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994); *Grant v. Bethlehem Steel Corp.*, 973 F.2d 96, 101 (2d Cir. 1992), cert. denied, 506 U.S. 1053 (1993); *DeLeon v. Little*, 2000 U.S. Dist. LEXIS 18378, No. 3:94 CV902 (RNC), 2000 WL 435494, at *4 (D. Conn. Mar. 2, 2000)) (emphasis added) (internal citation omitted). In fact, the court later continued its discussion of this issue, and held that "[s]o long as plaintiffs' unsuccessful claims are not wholly unrelated to plaintiffs' successful claims . . . hours spent on the unsuccessful claims *need not be deducted from the lodestar calculation.*" *Id.* at 284 (citing *Lunday*, 42 F.3d at 134) (emphasis added). Such is the case here. All of Plaintiffs' claims were interrelated. All of Plaintiffs' claims were based on the same facts. Moreover, although

2

Plaintiffs asserted many claims, all rested on First and Fourteenth Amendment constitutional rights, as well as similar claims under Religious Land Use and Institutionalized Persons Act ("RLUIPA") and Connecticut's Act Concerning Religious Freedom. As such, Plaintiffs award should not be reduced because all of their claims were "'inextricably intertwined' and 'involve[d] a common core of facts [and were] based on related legal theories.'" *Id.* (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996); *DeLeon*, 2000 U.S. Dist. LEXIS 18378, 2000 WL 435494, at *4) (internal quotation marks omitted).

## B. Billing Rates

Plaintiffs stand by their submitted rates for Attorneys McCarthy, Ash, Bryl, and Wenberg. First, both Attorneys McCarthy and Ash are experienced constitutional litigators. Previously, the District Court of Connecticut considered reasonable rates in 2002 for Connecticut, *see Tsombanidis v. City of West Haven*, 208 F. Supp. 2d 263, 274-84 (D. Conn. 2002), and the rates requested are in accord with the rates discussed. For example, in *Tsombanidis*, an attorney with 18 years experience in civil rights litigation requested $275 per hour, and testified that the "prevailing rates in medium to large firms in Connecticut in 2000 for attorneys with experience comparable to his" ranged from $250 to $325 per hour. *Id.* at 275. The court there agreed that $275 per hour was a reasonable rate for that attorney. *Id.* at 276. Since Attorney McCarthy submitted his affidavit stating that he has been practicing law for over 30 years, Attorney McCarthy stands by his assertion of the reasonableness of his for $300 per hour.

Attorney Ash's requested rate is reasonable as well. Again, in *Tsombanidis,* the court engaged in a discussion of reasonable rates for attorneys with similar experience to that of Attorney Ash. The rates awarded in Connecticut ranged from $200 per hour to $125 per hour during the years

3

1998 to 2001. Notably, the court in *Tsombanidis* recognized that an attorney's actual billing rate is probative of what that attorney and/or firm considered to be a reasonable rate. *Id.* at 276. As Plaintiffs discussed in their <u>Memorandum in Support of Motion for Attorney's Fees, Costs, and Expenses</u> of October 9, 2003 (hereinafter "October 9, 2003 <u>Memorandum</u>"), at 12, § 12, this office has requested the same and higher rates for staff counsel attorneys, ranging from $200 to $265 per hour. Attorney Ash has been practicing constitutional litigation since 1997. Where the range in Connecticut ran from $125 to $200 per hour for associates between the years 1998 and 2001, we believe the request for Attorney Ash of $200 per hour is a reasonable request.

Although Attorney Wenberg has been practicing law since October 2001, she has been employed by the American Center for Law & Justice since May 1999, and has engaged in the same or similar work since that time. We believe the rate requested for Attorney Wenberg is a reasonable rate, considering her time with this firm, as well as considering the amounts previously requested by this firm for its staff counsel. As stated above, the rates actually charged by the firm in the past are probative. In addition, similar rates were discussed in *Tsombandidis*. *Id.* at 276-78. There, the court discussed *Blackledge v. Carlone*, 126 F. Supp. 2d 224 (D. Conn. 2001), where fees were sought under 42 U.S.C. § 1988. *Id.* at 276. In *Blackledge*, the court awarded $200 per hour for an attorney with 8 years experience, and $175 per hour for attorneys with three and four years experience. *Id.* As such, even if this court finds that the reasonable rate has not increased to $200 since 2001, the rate should only be reduced (if at all) to $175 per hour, rather than $150 per hour as Defendants suggested.

### C.    **Number of Hours Billed**

Plaintiffs further stand behind the necessity and accuracy of their documented hours.

4

Defendants make much of the fact that the ACLJ uses similar briefs or complaints for similar cases. However, the ACLJ's realization that re-inventing briefs wastes time does not justify a reduction in hours. The time recorded by each attorney is accurate as to the *actual time* spent – none of those hours are "guess work" based on what we believe our documents would be worth if we had to start from scratch. Furthermore, each new case requires its own analysis of facts and research for new jurisdictions. Obviously, the law in one Circuit Court of Appeals will not be identical to the rest. New cases arise that bring nuances in each Circuit. Defendants point to the our case in Colorado, which is located within the Tenth Circuit Court of Appeals. Since Connecticut is located in the Second Circuit, obviously new legal research and was required for this case. The ACLJ is always concerned with keeping apprised of new law. Not only is this a principle of zealous advocacy, but is required by the Rules of Professional Conduct.

In sum, Defendants assertions are without merit. Our research banks may save time and effort, but that does not necessitate a finding of misreported hours. Moreover, demand letters and complaints in this case comprise a small number of hours compared to the remaining hours poured into research on issues not recently briefed by other attorneys in our firm for other cases. Consider these examples: Attorney McCarthy billed on Jan. 3, 2001 for Plaintiffs' <u>Supplemental Memorandum Regarding the Definition of A Church</u>, dated/served on January 18, 2001; Attorney McCarthy billed on Feb. 21, 2001 for preparing specific responses to the Court's questions; and Attorney McCarthy billed in August of 2001 for research on RLUIPA. Plaintiffs also had to draft responsive briefs to Defendants' Motion to Dismiss, including but not limited to the issue of exhaustion of administrative remedies. These are just a few examples of other briefs and issues that the ACLJ did not have prepared before this law suit began for other cases, all of which are fully

5

documented in Exhibit D, attached to <u>Plaintiffs' Motion for Attorney's Fees, Costs, and Expenses</u>. Considering that there has been three years worth of litigation billed for, Defendants' reliance on *two* documents found on the ACLJ website (a demand letter and a complaint) does not warrant this Court's finding a "clear pattern of using ACLJ prepared legal documents as the form and substance of their legal documents submitted in *this case*." <u>Def. Brief</u>, at 7 (emphasis added). No reduction of attorneys fees is warranted where the ACLJ may have relied on a similar demand letter and complaint in the year 2000, when litigation has been ongoing for three years. Defendants assertion is ridiculous.

As to the November 8, 2000 entry, this is a mere typographical error. As Defendants point out, the information letter sent is dated November 6, 2000 but there is also the demand letter which is dated November 8, 2000, both of which were previously submitted to this Court as Exhibits B and C with <u>Plaintiffs' Motion for Attorney's Fees, Costs, and Expenses</u>. Plaintiffs recognize the discrepancy, and after reviewing the files, believe the Nov. 8, 2000 entry contains a typographical error as to the date. However, the number of hours reflected is accurate, containing the time spent on both the November 6 and 8 letters. We have come to this conclusion since the November 6, 2000 letter is not reflected in the bill; in addition, the entry also reflects Attorney McCarthy's meeting with Mr. Pat Murphy regarding sending such letters. As explained above, each new case contains new facts, and each jurisdiction requires its own analysis and review. Thus, Attorney McCarthy stands by the accuracy of the number of hours documented for his time.

As to Defendants' assertions that "a more complete showing of evidence" be required, <u>Def. Brief</u>, at 10, or that the award of fees be reduced, *id.* for making arguments during the course of litigation as to discrimination against the religious content of the meetings, *id.* at 8-9, the assertion

6

lacks logic. Plaintiffs are well within their right to make every viable or alternative argument in the zealous representation of their case. This is true of all litigating parties. That a court decides to disagree with a party does not require that court to find that the attorney relied on the facts of another case, such as *Reiter v. City and County of Denver, Colorado*, as defendants suggest. *Id* at 8. In fact, this argument fails under the legal principles asserted previously, in Section A.1. If the facts and legal theories of several claims are inextricably intertwined (as they are here), loss on some claims does not require a reduction in attorney's fees. The measure of success is that of an "excellent result": "Where a plaintiff has obtained excellent results, his attorney should recover fully a compensatory fee." *Tsombanidis*, 208 F. Supp. 2d at 285 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Since the goal of this litigation was realized, that being the permanent enjoining of the Cease and Desist Order, Plaintiffs believe this is an excellent result for their clients, deserving of a full recovery.

**D.     Accuracy of Description**

Contrary to Defendants allegations of vague entries, each entry adequately describes each activity with respect to the date, the hours expended and the nature of the work done for each attorney. This is all that is required, *Tsombanidis*, 208 F. Supp. 2d at 270, and Plaintiffs have complied. Generally, each entry is specific to the document created at the time; each entry was generated contemporaneously with the work; and each entry describes in sufficient detail the nature of the work completed. There are no time records missing for which the Plaintiffs would have had to create of summary of work guessed, and the documentation submitted supports this assertion. For example, Attorney McCarthy's entries refer to documents created in support of the various motions and hearings in the case, refers to specific issues such as, *inter alia*, RLUIPA, the definition of

Church, and exhaustion of administrative remedies where research is designated; specific persons are listed as to whom phone calls were made or as to whom meetings were held with. The same can be said of entries made by Attorneys Ash and Wenberg. Defendants take issue that each specific issue was not separated (as opposed to separated by document), however, as Plaintiffs previously argued, all Plaintiffs claims are essentially interrelated and inextricably intertwined. Should the Court wish to determine the accuracy of hours regarding specific issues, the number of pages spent on each issue aids in this determination. For example, in Attorney Wenberg's hours spent researching and writing for the Opposition brief to Defendants Motion for Summary Judgment (see Attorney Wenberg's entries from Nov. 11, 2002 to December 5, 2002), the pages are evenly divided between constitutional claims and statutory claims, as well as defending the constitutionality of the statutes in issue.[1] However, Plaintiffs find this requirement counterproductive where all the issues in this case relate to identical facts, and all the legal theories are interrelated, with the exception of the briefing on the constitutionality of RLUIPA and Connecticut's Act Concerning Religious Freedom. The questions of constitutionality were raised by defendants, and what is more, Plaintiffs were successful in defending against those claims as well.

Attorneys McCarthy, Ash, Bryl and Wenberg continue to stand by their submitted records as accurate and sufficiently detailed for the purposes of 42 U.S.C. § 1988.

### III. DEFENDANTS' ALLEGED ATTEMPT TO MITIGATE DAMAGES AT THE OUTSET IS MISLEADING

Defendants assert that the Cease and Desist Order was only a "first step." <u>Def. Brief</u>, at 14.

---

[1] Pages 1-22 relate to constitutional and statutory claims, and pages 22-44 relate to defending the constitutionality of RLUIPA and Connecticut's Act Concerning Religious Freedom.

8

However, requiring Plaintiffs to re-assert their position on constitutional law to an administrative appeal board hardly qualifies as an attempt to negotiate or resolve an issue without litigation. Plaintiffs explained their beliefs and legal position in the November 6 and 8, 2000 letters. As previously explained in Plaintiffs' October 9, 2003 Memorandum, 7 n.1, several of the cases and legal principles cited in those letters provided the basis for this Court's Ruling on Cross Motions for Summary Judgment. Defendants chose to ignore those principles, and issued the Cease and Desist Order. The Cease and Desist Order legally changed the parties' relationship – that Order is more appropriately characterized as the final step for the Zoning Commission, rather than a first step. Plaintiffs' suit further changed that relationship, as they achieved their legal goal, and the Order is now enjoined.

In any event, the Plaintiffs were not required to resolve this issue at the outset by appealing to the zoning board of appeals. Defendants attempt to justify their request for a reduction by implying that Plaintiffs had a duty to mitigate damages by first appealing to the zoning board of appeals, Def. Brief at 14, rather than filing suit in this Court. However, this Court previously resolved this issue in its Ruling on Defendants' Motion to Dismiss, pp. 5-15 (August 30, 2002) (Plaintiffs not required under Section 1983 to exhaust administrative remedies). Even if this had not been previously determined, if Plaintiffs had continued the administrative route, and the issue had not been resolved to Plaintiffs' satisfaction at that level, Plaintiffs could have properly claimed fees for unsuccessful administrative proceedings after a successful suit under 42 U.S.C. §§ 1983 and 1988: "Under § 1988, a court *should* award attorneys' fees for time 'spent on administrative proceedings to enforce the civil rights claim prior to the litigation.'" *Tsombanidis*, 208 F. Supp. 2d at 283 (quoting *Lambert v. Fulton County*, 151 F. Supp. 2d 1364, 1371 (N.D. Ga. 2000) (quoting

9

*North Carolina Dept. Of Transp. V. Crest Street Community Council, Inc.*, 479 U.S. 6, 15 (1986)) (emphasis added).

Moreover, to now punish the Plaintiffs for utilizing the judicial process thwarts Congress' intent to preserve important civil rights: "[C]ongress's intent in enacting the attorney's fee provision was quite broad: 'The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.'" *Cowan v. Prudential Ins. Co. of America*, 935 F.2d 522, 526 (2d Cir. 1991) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)) (internal quotation marks omitted) (attorney fee award need not be reduced to achieve proportionality with actual damage award). For both of these reasons, Defendants cannot now re-litigate the issue of exhaustion by claiming Plaintiffs had some duty to mitigate costs and fees through administrative remedies. A reduction in a fee award on that basis would only serve to punish Plaintiffs, and to discourage future plaintiffs from vindicating civil rights grievances under 42 U.S.C. § 1983.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully object to the Defendants' request for denial of Plaintiffs' Motion, a "more complete showing of evidence," <u>Def. Brief</u>, at 10, or reduction of fees. In addition, Plaintiffs have attached the Affirmation of Joseph P. Infranco, Esq., as further evidence of the validity and reasonableness of Plaintiffs' <u>Motion for Attorneys Fees, Costs, and Expenses</u>. *See* Exhibit J, attached hereto.

Dated: October 30, 2003

THE PLAINTIFFS

BY: _____
Vincent P. McCarthy, Esq.  ct 07508
8 South Main Street
P. O. Box 1629
New Milford, Connecticut  06776
Ph.: (860) 355-1902/Fax: 860-355-8008

## CERTIFICATION

This is to confirm that a copy of the foregoing has been mailed by UPS Overnight Mail on October 30, 2003 to:

Steven E. Byrne, Esq.
2-B Farmington Commons
790 Farmington Avenue
Farmington, CT.   06032

_____
Vincent P. McCarthy

11

# Exhibit J

# Alliance Defense Fund

*"Without Me you can do nothing."* — JOHN 15:5

**ALAN E. SEARS**
*President & General Counsel*

15333 N. Pima Road • Suite 165
Scottsdale, Arizona 85260

## AFFIRMATION OF JOSEPH P. INFRANCO

I, Joseph P. Infranco, do hereby affirm the following information under penalty of perjury:

1. I am an attorney admitted to practice in the State of New York, and am admitted in all State Courts as well as the Federal District Court for the Eastern and Southern Districts, the United States Federal Court of Appeals for the Second Circuit, the United States Supreme Court, and the U.S. Tax Court.
2. I am currently a Vice-President and Senior Counsel with the Alliance Defense Fund in Scottsdale, Arizona, where I am the director of over 700 affiliate attorneys trained throughout the country in religious freedom and First Amendment cases.
3. I have handled or served as local counsel in numerous cases in the State of New York including: Lamb's Chapel v. Center Moriches School District; Hsu v. Roslyn School District; Altman v. Bedford School District; Amandola v. Town of Babylon (*I & II*); Bronx Household of Faith v. Board of Ed. Of the City of N.Y. (*I&II*); Full Gospel Tabernacle v. Community School District; Daly v. N.Y.C. Housing Authority; and Travis v. Owego School District.
4. I have spoken at numerous functions on First Amendment issues, including Bar Association events, Law School Symposia, Educational meetings, and have testified on religious freedom issues before the U.S. Commission on Civil Rights and before a U.S. House Subcommittee hearing.
5. Based upon my experience, my rates for attorneys fees in similar cases in New York would be billed at $350.00 per hour out of office and $300.00 per hour in office. From my twenty five years of practice in New York, these are fair and customary rates for this area of practice commensurate with my background and level of experience. I am aware of other organizations involved in Constitutional litigation receiving approval for hourly fees as high as $400.00 per hour, where justified by experience and results.

**ADF FOUNDERS**

BILL BRIGHT
*Campus Crusade for Christ*

LARRY BURKETT
*Crown Financial Ministries*

JAMES DOBSON
*Focus on the Family*

D. JAMES KENNEDY
*Coral Ridge Ministries*

MARLIN MADDOUX
*"Point of View" Radio Program*

WILLIAM PEW
*Maranatha Foundation*

Affirmed this 23rd day of October, 2003

Joseph P. Infranco

*Winning the Legal Battle for Family Values, Religious Freedom, and the Sanctity of Human Life*
**PHONE:** 480-444-0020   **FACSIMILE:** 480-444-0025   **E-MAIL:** asears@alliancedefensefund.org

ECFA MEMBER
*A symbol you can trust.*